UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SANDRA MILLER HOLST,

    Plaintiff,

- against -

THE COLLEGE BOARD,

    Defendant.

------------------------------------------------------------x

07 CV 2769

06 Civ.

COMPLAINT

ECF CASE

PLAINTIFF DEMANDS A
TRIAL BY JURY

JUDGE SWAIN

RECEIVED APR 0 5 2007 U.S.D.C. S.D.N.Y. CASHIERS

  Plaintiff Sandra Miller Holst ("plaintiff" or "Holst"), through her attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complains of defendant The College Board ("defendant" or "Board"), as follows:

### NATURE OF THE ACTION

  1. Plaintiff brings this action to remedy race discrimination in employment and to remedy retaliation for her opposition to such unlawful employment actions, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and to remedy race and sex discrimination in employment and to remedy retaliation for her opposition to such unlawful employment actions, in violation of the New York State Human Rights Law, Executive Law § 296 et seq. (the "Executive Law"); and the Administrative Code of the City of New York § 8-101 et seq. (the "City Law").

  2. Plaintiff seeks injunctive and declaratory relief, damages, and other legal and equitable relief pursuant to Section 1981, the Executive Law, and the City Law.

242564 v4

## JURISDICTION AND VENUE

3. The Court has jurisdiction over plaintiff's Section 1981 claim under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

4. The Court has supplemental jurisdiction over plaintiff's Executive Law and City Law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 29 U.S.C. § 626(c) and 28 U.S.C. § 1391 because the unlawful practices complained of herein occurred within the Southern District of New York.

6. Pursuant to § 8-502(c) of the City Law, prior to filing the Complaint in this matter, plaintiff served a copy of the Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

## PARTIES

7. Plaintiff, an African-American woman, was employed by defendant from 1997 until her employment terminated effective on or about September 30, 2005.

8. Defendant The College Board is a nonprofit association providing college-related services, including administration of the SAT and other testing programs. It is an employer within the meaning of the Executive Law and the City Law.

## FACTUAL ALLEGATIONS

### Background

9. Holst is an experienced educational administrator. She holds two master's degrees, including a degree in educational administration from Columbia, and is completing a Ph.D. in Leadership in Higher Education this year. Prior to beginning her employment with The College Board, she had ten years of experience in higher education administration.

242564 v4

2

10. The Board hired Holst in 1997 as Director of its ACCUPLACER program, which provides placement tests for students entering college. Under her direction, it transitioned from a paper and pencil assessment to the first Web-based higher education assessment in the United States. It also grew from a failing program to a strong, revenue-generating program. In eight years, she achieved a 998% revenue increase, and increased the test volume from 1.0 to 5.5 million annually.

11. Based on her excellent performance, years of service, and the level of peers in comparable positions, Holst began to ask for a promotion from director to executive director.

12. At the time of the termination of her employment, Holst was one of 33 program heads at the Board. Thirty of the 33 program heads held the title of executive director.

13. There were no African-American executive directors at the Board. Holst was one of eight African-American directors, of a total of approximately 84.

14. Many of the white program heads held the title of executive director but managed programs that were measurably less successful than Holst's ACCUPLACER program.

Plaintiff's Requests for Promotion

15. Holst met with the senior vice president responsible for her program, Fred Dietrich, every few months from early 2001 through July 2005, specifically requesting promotion to executive director. She also made regular requests of various immediate supervisors.

16. In mid-2004, Holst and a female colleague, Ariel Foster ("Foster"), began intensive discussions with Michael Cappetto ("Cappetto"), a vice president and Holst's direct supervisor concerning promotion to executive director. Holst was the only African-American

employee heading a revenue-generating program and Holst and Foster were the only such employees not at the executive director level.

17. On or about July 1, 2004, Cappetto stated that Holst and Foster deserved to be executive directors, and that he was in the process of submitting the paperwork for this promotion.

18. In September 2004, however, Cappetto stated that the promotions would be considered by the promotion committee. In November 2004, Cappetto's employment was terminated. He told Holst that he had discussed her promotion with her incoming supervisor, Vice President James Montoya ("Montoya").

19. On information and belief, Holst's repeated requests for promotion were never brought to the Board's promotion committee.

### Plaintiff's Presentation of Concerns

20. Holst met with her supervisor, Montoya, several times in December 2004 and repeated her request for promotion. At his request, she prepared a 48-screen PowerPoint presentation containing an outline of her proposals for assuming more responsibility at the Board.

21. The presentation included concerns within her own program for "lack of support for key minority and two-year audiences." It also proposed more broadly to redress racial discrimination by redefining the Board's role as a "resource, not a gatekeeper," including for "underserved student populations."

22. Montoya stated that the proposal was "much more than expected," and that he intended to assign Holst to a position dealing with special projects including "diversity" initiatives. He never did so.

242564 v4                                    4

### Discriminatory Treatment and Remarks

23. Holst's requests for recognition of her work were met with disparaging remarks. Though her managers agreed that her work product was excellent, they stated that she needed to work on "internal relationships" – with the overwhelmingly white senior staff – before she could be promoted.

24. Several senior executives made remarks indicating stereotypes of African-American women. For example, Vice President Allan Heaps told her she was "obnoxious in a good way." A senior vice president called her "pleasantly aggressive."

25. When met with refusals from her managers, Holst took her concerns to the Board's Human Resources department. Vice President of Human Resources Connie Zalk declined to address her concerns, stating "we don't even know what you do."

26. Following Holst's raising concerns about the repeated denials of her request for promotion as well as about discrimination in the Board's programs, superiors also began to criticize her work performance baselessly. For example, she was accused of sharing inappropriate information with a vendor. This accusation was wholly false.

### Constructive Discharge

27. In the spring of 2005, Holst submitted an application for the open position of Vice President, Middle States Region, a position for which she was qualified. She did not receive an interview for the position.

28. On June 3, 2005, Holst inquired about her application for the Vice President, Middle States Region position, and also again asked about promotion to executive director. Although initially voicing some encouragement, Montoya stated that Holst's work had

"no value at the College Board" because her program was a "program associated with community colleges."

29. Montoya stated that he believed Holst's goal to be "to become a community college president," a goal he said was inconsistent with continued employment at the Board. Holst had not stated such a goal.

30. Montoya told Holst "when you see others promoted and you are not, it might be time for you to look elsewhere." He concluded "you won't get there from here," and that she was "going no place" at the Board.

31. The humiliation of being denied the recognition, status, and compensation received by her white peers despite years of measurably superior work, as well as the baseless criticism of her work, and the disparaging and subtly racist remarks accumulated to create intolerable working conditions.

32. Based on these intolerable working conditions and Montoya's remarks stating that she would need to "look elsewhere" to escape them, Holst was forced out of her position at the Board. On September 12, 2005, she submitted a letter stating: "Given the current circumstances of my employment and the College Board's refusal to recognize my abilities and promote me, I am compelled to seek opportunities elsewhere." The letter further stated that Holst considered her employment terminated effective September 30, 2005.

33. Upon information and belief, plaintiff's former position was filled by a less qualified white man with the same responsibilities employed at the executive director level.

## FIRST CAUSE OF ACTION

### Discrimination Under Section 1981

34. Plaintiff repeats and realleges paragraphs 1-33 above.

35. By the acts and practices described above, including but not limited to constructive discharge, defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her race, in violation of Section 1981.

36. Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's protected rights.

37. Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation as a result of defendant's discriminatory practices unless and until this Court grants relief.

## SECOND CAUSE OF ACTION

### Retaliation Under Section 1981

38. Plaintiff repeats and realleges paragraphs 1-37 above.

39. By the acts and practices described above, including but not limited to constructive discharge, defendant retaliated against plaintiff for the exercise of her rights under Section 1981.

40. Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's protected rights.

41. Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation, and damage to her reputation as a result of defendant's retaliatory practices unless and until this Court grants relief.

## THIRD CAUSE OF ACTION

### Race Discrimination Under the Executive Law

42. Plaintiff repeats and realleges paragraph 1-41 above.

43. By the acts and practices described above, including but not limited to constructive discharge, defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her race, in violation of the Executive Law.

44. Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation, and damage to her reputation as a result of defendant's discriminatory practices unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION

### Sex Discrimination Under the Executive Law

45. Plaintiff repeats and realleges paragraph 1-44 above.

46. By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex, in violation of the Executive Law.

47. Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation, and damage to her reputation as a result of defendant's discriminatory practices unless and until this Court grants relief.

## FIFTH CAUSE OF ACTION

### Retaliation Under the Executive Law

48. Plaintiff repeats and realleges paragraphs 1-47 above.

49. By the acts and practices described above, including but not limited to constructive discharge, defendant retaliated against plaintiff for the exercise of her rights under the Executive Law.

50. Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation, and damage to her reputation as a result of defendant's retaliatory practices unless and until this Court grants relief.

## FIFTH CAUSE OF ACTION

### Race Discrimination Under City Law

51. Plaintiff repeats and realleges paragraphs 1-50 above.

52. By the acts and practices described above, including but not limited to constructive discharge, defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her race, in violation of City Law.

53. Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's protected rights.

54. Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation, and damage to her reputation as a result of defendant's discriminatory practices unless and until this Court grants relief.

## FIFTH CAUSE OF ACTION

### Sex Discrimination Under City Law

55. Plaintiff repeats and realleges paragraphs 1-54 above.

56. By the acts and practices described above, including but not limited to constructive discharge, defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex, in violation of City Law.

57. Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's protected rights.

58. Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation, and damage to her reputation as a result of defendant's discriminatory practices unless and until this Court grants relief.

## SIXTH CAUSE OF ACTION

### Retaliation Under City Law

59. Plaintiff repeats and realleges paragraphs 1-58 above.

60. By the acts and practices described above, including but not limited to constructive discharge, defendant retaliated against plaintiff for the exercise of her rights under the City Law.

61. Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's protected rights.

62. Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation, and damage to her reputation as a result of defendant's retaliatory practices unless and until this Court grants relief.

PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court enter an award:

a. declaring that the acts and practices complained of herein are in violation of Section 1981, the Executive Law, and the City Law;

b. enjoining and permanently restraining these violations of Section 1981, the Executive Law, and the City Law;

c. directing defendant to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

d. directing defendant to place plaintiff in the position she would have occupied but for defendant's discriminatory and unlawful conduct and making her whole for all earnings and other benefits she would have received but for defendant's discriminatory treatment, including, but not limited to, wages, pension, personal tuition assistance, dependent tuition assistance, and other lost benefits;

e. directing defendant to pay plaintiff compensatory damages for her mental anguish and humiliation;

f. directing defendant to pay plaintiff punitive damages for its intentional disregard of and/or reckless indifference to plaintiff's statutory rights;

g. directing defendant to pay plaintiff's attorneys' fees, costs and disbursements pursuant to Section 1981, the Executive Law, and the City Law;

h. directing defendant to pay prejudgment interest; and

i. awarding plaintiff damages to compensate for any adverse tax consequences;

      j.    granting such other and further relief as this Court deems necessary and proper.

Dated: New York, New York  
       April 5, 2007

                                VLADECK, WALDMAN, ELIAS &  
                                ENGELHARD, P.C.

By: _/s/ Anne C. Vladeck_  
      Anne C. Vladeck (AV 4857)  
      Maia Goodell (MG 8905)  
      Attorneys for Plaintiff  
      1501 Broadway, Suite 800  
      New York, New York  10036  
      (212) 403-7300